# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:09CR00004 |
| v. ) | **OPINION** |
| ) | |
| TERENCE PATRICK ) | By: James P. Jones |
| McLAUGHLIN, ET AL., ) | United States District Judge |
| ) | |
| Defendants. ) | |

*Sharon Burnham, Assistant United States Attorney, Roanoke, Virginia, and Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; E. Scott Austin and Leigh R. Strelka, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for State of Oregon; and Christopher J. Blythe, Assistant Attorney General of Wisconsin, Madison, Wisconsin, for State of Wisconsin.*

The defendants in this criminal case, Terence Patrick McLaughlin, George Chemali, and C.L.P., Inc., a corporation,[1] were convicted of conspiracy to violate the Contraband Cigarette Trafficking Act, 18 U.S.C.A. §§ 2341-46 (West 2000 & Supp. 2009), and to evade the federal cigarette excise tax, as well as mail fraud in connection with the false reporting of cigarette sales. CLP was a cigarette manufacturer and McLaughlin and Chemali were officers or agents of CLP.

---

[1] In the record, C.L.P., Inc. is also called C.L.P. Inc. or CLP, Inc. For convenience, it will be referred to in this Opinion as CLP.

In connection with the prosecution, this court entered an order of forfeiture of certain substitute property pursuant to 21 U.S.C.A. § 853(p) (West Supp. 2010) on September 30, 2009. This order provided, in relevant part, that the interest of the defendants in the following property was forfeited to the United States:

> All funds, to include deposits and interest accruals, held by First Citizens Bank & Trust Company as Escrow Agent for C.L.P. Inc. in Qualified Escrow, Account No. 75-0525-01-9, to include all sub-accounts related thereto, in the approximate balance of not less than $722,135.27.

(First Am. Order of Forfeiture 2, Sept. 30, 2009.) Thereafter, the States of Oregon and Wisconsin filed petitions pursuant to 21 U.S.C.A. 853(n) (West 1999), seeking an adjudication of their third-party interests in these forfeited funds. The petitions have been heard and are ripe for decision.[2]

I

The parties are agreed as to the facts underlying this dispute. In the 1990's, a number of states sued the major tobacco companies, seeking compensation for their expenditures in treating tobacco-related illnesses, as well as injunctive relief. In 1998, this litigation culminated in a so-called Master Settlement Agreement ("MSA"),

---

[2] Other states also petitioned for such an adjudication, but the other claims have been resolved by settlement with the government and only the claims of Oregon and Wisconsin remain.

in which the participating tobacco manufacturers agreed to large continuing monetary payments to the states, as well as future restrictions on advertising and distribution of tobacco products.

Some manufacturers, including the defendant CLP, were not parties to the MSA. Accordingly, all of the participating states adopted statutes requiring each such non-participating manufacturer ("NPM") to establish an escrow account and pay into it specific amounts of money for tobacco products sold in the state, as a condition to selling in the state.[3] The amounts paid into escrow approximate what the NPM would have paid had it joined the MSA.

In accord with these statutes, CLP entered into an Escrow Agreement dated April 30, 2003, with an escrow agent, First-Citizens Bank & Trust Company, located in North Carolina, and made payments for several years

The Escrow Agreement, which follows the requirements of the state statutes, provides for CLP to make annual payments into the escrow account for tobacco products sold by it in the beneficiary states, to be held in a sub-account for the benefit of each state, and to be released only to pay a judgment or settlement on a tobacco-

---

[3] *See, e.g.,* Or. Rev. Stat. Ann. § 323.806 (WL 2010); Wis. Stat. Ann. § 995.10 (WL 2010). These statutes have been upheld against constitutional- and antitrust-based attacks by NPMs. *See, e.g, S & M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604, 629-638 (M.D. Tenn. 2005), *aff'd,* 228 F. App'x 560 (6th Cir. 2007).

related claim against CLP brought by the state. "To the extent not released from escrow" for payment of such claims, the principal "shall be released from escrow and revert back to [CLP]" in 25 years from the date of each annual installment. (Escrow Agreement § 3(f)(iii).)[4] CLP is entitled to the interest from the Escrow Account "as earned," after deduction of the escrow agent's fees and expenses. (*Id.* § 3(e).)[5]

The petitioning states agree that they have no claim to the interest generated by their sub-accounts, since the Escrow Agreement provides that CLP is to receive that money as earned. However, they contend that the United States is not now entitled to the principal, since CLP has only a reversionary interest and the United States cannot obtain any greater interest than CLP has in the principal funds. They contend that the government must wait until the 25-year period has elapsed before obtaining any remaining principal funds. That way, the petitioners assert, money will

---

[4] The Escrow Agreement also provides that if CLP shows that the amount that it is required to place into escrow in a particular year is greater than the amount it would have had to pay to the state had it been a participating manufacturer in the MSA, it should receive a refund of the excess amount. There is no evidence that has ever occurred. CLP is out of business and no longer pays into the escrow account. Funds were deposited by CLP into the sub-account attributable to Oregon in 2004, 2005, and 2007, totaling $18,967.67, and into Wisconsin's sub-account in 2003 and 2004, totaling $4,563.33. These deposits were all prior to any criminal conduct as charged in this case.

[5] The escrow funds must be invested in obligations of the United States or money market funds issued by qualifying banks.

be available to pay towards any future claims made against CLP for tobacco harm, and the public interest will be served.

To the contrary, the United States asserts that it is entitled to immediate forfeiture of the entire principal contained in the sub-accounts attributable to Oregon and Wisconsin, regardless of the terms of the Escrow Account and the state statutes.

III

Section 853 of title 21 provides that following the entry of an order of forfeiture, any person "asserting a legal interest in the property" may petition the court to adjudicate the validity of the alleged interest. 21 U.S.C.A. § 853(n)(2). If the petitioner convinces the court by a preponderance of the evidence that it has "a legal right, title, or interest" in the property which "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant," then the court must amend the order of forfeiture, either in whole or in part, in accord with its determination. 21 U.S.C.A. § 853(n)(6)(A). The term "legal interest" as used in the statute "encompasses all legally protected rights, claims, titles, or shares in real

or personal property." *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987).[6]

The United States contends that the petitioners have no legal interest in the principal funds, so as to give them standing to petition the court or to defeat the government's forfeiture. It analogizes the states' position to that of a spouse with an inchoate marital right in a retirement account, *United States v. Norton*, No. 2:99CR10078, 2002 WL 31039138, at *4 (W.D. Va. Sept. 3, 2002), a judgment creditor who has not executed its lien on specific real estate, *United States v. McClung*, 6 F. Supp. 2d 548, 552 (W.D. Va. 1998); or a bank with an unexercised right of setoff in a deposit account, *United States v. BCCI Holdings (Luxembourg)*, 980 F. Supp. 10, 14-15 (D.D.C. 1997), none of whom, it was held, had the necessary legal interest to overcome forfeiture.

The government argues that since the petitioners have made no claims against CLP which would be payable out of the escrow account, they have no present legal interest, but only a contingent interest, dependent upon making their claims.

---

[6] The nature of the interest is determined by reference to state property law. *United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir. 2001). The parties do not contend that there is any material difference in the relevant laws of Oregon, Wisconsin, or North Carolina, whose law the Escrow Agreement references.

I disagree with the government. The states' interests in the escrow funds is not deficient because they have simply failed to take some additional step required to perfect that interest. The state statutes and the Escrow Agreement specifically provide them with the right for up to 25 years to make their tobacco-related claims, without reversion of the fund to CLP during that time. Unlike the defendants in the cases relied upon by the government, CLP has no power over the funds until the escrow expires, regardless of whether the states have made any claims.

As the petitioners point out, forfeiture has been construed to mean that the government can only obtain the interest that the defendant has in the specific property. *See O'Dell*, 247 F.3d at 680. The government, as it has been said, "simply steps into the defendant's shoes." *Id.* (quoting *Kuhn v. Vista Disposal, Inc.*, 826 F. Supp. 218, 224 (E.D. Mich. 1993)). Stepping into CLP's shoes here means that the government must wait for the reversion of the principal funds in accord with the terms of the Escrow Agreement.[7]

For these reasons, I find that the petitioners have shown that the forfeiture order must be amended to protect their legal interest in the funds contained in the escrow account.

---

[7] Oregon alternatively argues that the Escrow Agreement created a security interest in its favor in the escrowed funds under Article 9 of the Uniform Commercial Code. It is not necessary for me to determine this issue in light of my ruling.

IV

The petitions of the States of Oregon and Wisconsin will be granted in the manner indicated. A separate order will be entered forthwith.

DATED: September 9, 2010

/s/ JAMES P. JONES
United States District Judge